Paul Andre BLANTON, Petitioner–
Appellant,

v.

Frank ELO, Warden, Respondent–
Appellee.

No. 97–2003.

United States Court of Appeals,
Sixth Circuit.

Argued: April 21, 1999.

Decided and Filed: July 26, 1999.

James Krogsrud (argued and briefed), Detroit, Michigan, for Petitioner–Appellant.

Janet A. Van Cleve (argued and briefed), Office of the Attorney General, Habeas Corpus Division, Lansing, Michigan, for Respondent–Appellee.

Before: SILER and MOORE, Circuit Judges; SMITH, District Judge.*

SILER, J., delivered the opinion of the court, in which SMITH, D.J., joined. MOORE, J. (pp. 716–17), delivered a separate opinion concurring in the result.

## OPINION

SILER, Circuit Judge.

Petitioner–Appellant, Paul Blanton, appeals the district court's dismissal of his petition for a writ of habeas corpus. Blanton is currently imprisoned by the state of Michigan and is serving two non-parolable life sentences for two first degree murder convictions, twenty-five to fifty years for a second degree murder conviction, and two years for possessing a firearm during the commission of a felony. We affirm because the state court decision was not an unreasonable application of federal law.

## I. BACKGROUND:

According to the prosecution's theory of the three murders, Blanton killed Sharon Matthews, Johnifer Harris, and Marty Allen because he wanted to steal their drugs and money. Blanton's version of events is to the contrary. He says Matthews and Harris began arguing in the apartment and Allen shot them. Blanton maintains that he then wrestled the gun from Allen, but when Allen came at him with a knife, he shot Allen. He says that when he checked on Harris and Matthews, he saw that Harris had fallen through the second-floor window and was lying on the ground below. He thought he saw Harris move for his weapon, felt threatened, and shot Harris himself. He then moved Matthews's body toward the apartment stairs so as to obtain medical help for her, but when he decided she was already dead, he moved her body back to where she was shot. He claims he never shot Matthews, but he did shoot Allen and Harris in self-defense.

Blanton was allowed to introduce some testimony from Dr. Ronald DeBoer, a clinical psychologist who was experienced in treating the effects of trauma and who had been treating Blanton for several months. The testimony permitted at trial related to post-traumatic stress syndrome and selective amnesia, evidence intended to help the jury understand why Blanton's statements to the police differed somewhat from each other and why Blanton might not recall all details of the incident. Blanton proffered, but was not allowed to introduce, testimony from Dr. DeBoer which related to his state of mind at the time of the incident. In DeBoer's opinion, at the time of the incident Blanton experienced "derealization," a disruption in the perception of traumatic events as they are occurring. This testimony was offered to show how Blanton could have honestly and reasonably believed that he needed to act in self-defense against Harris and Allen.[1] Because the trial court thought that the testimony related to a diminished capacity defense, for which the required pretrial notice had not been given, it excluded the testimony.

Blanton appealed his conviction to the Michigan Court of Appeals, asserting among other things that he had been denied his federal constitutional right to fairly present his defense. The Michigan Court of Appeals found that the testimony from DeBoer regarding "derealization" did not relate to a diminished capacity defense, but held that the error in excluding the testimony for that reason was harmless because the evidence was cumulative to Blanton's own testimony.

---

* The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation.

1. In Michigan, one acts lawfully in self defense if he honestly and reasonably believes that he is in danger of serious bodily harm or death, *see People v. Heflin*, 434 Mich. 482, 456 N.W.2d 10 (1990), as "judged by the circumstances as they appeared to the defendant at the time of the act," Mich. Std.Crim. Jury Instr.2d 7.15(3).

Defendant testified in his own behalf and related his version which supported his self-defense theory regarding Harris and Allen and claimed that he did not shoot Matthews. Dr. DeBoer did testify at trial concerning post-traumatic stress syndrome and selective amnesia and that he believed that defendant suffered from both of these disorders. Dr. De-Boer explained that defendant consistently held to the belief that his life was in danger and that he perceived his life was in danger.

Because defendant testified to events supporting his defense of self-defense, any opinion testimony by Dr. DeBoer would have been cumulative. The jury still had to determine defendant's credibility and whether he had an honest and reasonable belief that his life was in danger under all the circumstances as they appeared to defendant. Accordingly, contrary to defendant's argument, the trial court did not deny him his right to present a defense by excluding Dr. DeBoer's testimony concerning his mental state at the time of the offenses. Defendant fully testified to his version of events and presented his claim of self-defense.

*People v. Blanton*, No. 122342 at 5 (Mich. Ct.App. June 1, 1994) (citations omitted). The Michigan Supreme Court denied Blanton's application for leave to appeal, with one justice dissenting.

The district court for the Eastern District of Michigan dismissed Blanton's writ of habeas corpus upon recommendation of a magistrate judge.

Petitioner ... argues that Magistrate Carlson erred in finding that the proposed evidence regarding derealization was offered for the limited purpose of supporting credibility, and was therefore not critical factual testimony. The court agrees with petitioner that the outcome of credibility determinations may be critical to a jury's verdict, but Dr. De-Boer was allowed to testify that petitioner suffered from post-traumatic stress syndrome and selective amnesia at the time of the shooting. This testimony went directly to petitioner's credibility, and supported his testimony in full. Thus, petitioner was never denied the right to bring forward witnesses to support either his theory of the case, or his credibility.

*Blanton v. Elo*, No. 96–CV–71991–DT at 4 (E.D.Mich. Aug. 27, 1997).[2] This court granted a certificate of appealability as to one issue: whether the trial court denied Blanton's due process and Sixth Amendment rights when it ruled his evidence of derealization was inadmissible.

## II. DISCUSSION:

Before a writ may issue under 28 U.S.C. § 2254, a federal court must find that the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

 This court has adopted the rule that:

the unreasonableness of a state court's application of clearly established Supreme Court precedent will not be "debatable among reasonable jurists,"

2. The district court was mistaken in its statement regarding Dr. DeBoer's testimony. His testimony as to post-traumatic stress syndrome and selective amnesia explained inconsistencies in Blanton's statements to police and gaps in his memory. He was not allowed to testify to Blanton's state of mind at the time of the shooting in any way. The testimony as to amnesia and post-traumatic stress syndrome was admitted in relation to Blanton's state of mind after the event. These two disorders by their very definition relate to mental processes after an event.

*Drinkard,* 97 F.3d at 769, if it is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," *O'Brien,* 145 F.3d at 25.

*Nevers v. Killinger,* 169 F.3d 352, 362 (6th Cir.1999) (*quoting Drinkard v. Johnson,* 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), overruled on other grounds by *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and *O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir.1998)). This court reviews the district court's denial of habeas corpus relief de novo. *See Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir.1998).

■ The issue in the instant case involves whether the trial court was required to receive evidence from Dr. DeBoer on Blanton's derealization at the time of the events in order to satisfy Blanton's due process and Sixth Amendment rights. The issue is not one of the state court's "determination of the facts in light of the evidence," § 2254(d)(2), and there is no clear "rule" enunciated by the Supreme Court on the admissibility of such evidence, so we will decide whether the state court decision "involved an unreasonable application" of clearly established Supreme Court precedent under § 2254(d)(1). *See Nevers,* 169 F.3d at 358–61.

Blanton relies primarily on *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), as the "clearly established federal law" which the Michigan court has misapplied.

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *California v. Trombetta,* 467 U.S. [479,] 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 [ (1984) ]. We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing." *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

*Crane,* 476 U.S. at 690–91, 106 S.Ct. 2142 (some citations omitted). In *Montana v. Egelhoff,* 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), the Court explained its holding in Crane.

> Our holding that the exclusion of certain evidence in that case violated the defendant's constitutional rights rested not on a theory that all "competent, reliable evidence" must be admitted, but rather on the ground that the Supreme Court of Kentucky's sole rationale for the exclusion (that the evidence "did not relate to the credibility of the confession,") was wrong. Crane does nothing to undermine the principle that the introduction of relevant evidence can be limited by the State for a "valid" reason. . . .

*Egelhoff,* 518 U.S. at 53, 116 S.Ct. 2013 (citations omitted). Among the "familiar and unquestionably constitutional evidentiary rules" which authorize the exclusion of relevant evidence is Federal Rule of Evidence 403, which provides that relevant "evidence may be excluded if its probative value is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See id.* at 42, 116 S.Ct. 2013.

Because Blanton's defense required him to show the jury that he honestly and reasonably believed his life to be in dan-

ger, and because those circumstances were to be judged from Blanton's perspective at the time of the shooting, Dr. DeBoer's proffered testimony regarding derealization was "competent, reliable evidence ... central to the defendant's claim of innocence." *See Crane*, 476 U.S. at 690, 106 S.Ct. 2142. The Michigan Court of Appeals found no abuse of discretion in the exclusion of that testimony, however, because there was a justification for the ruling made: the testimony was cumulative. The court saw DeBoer's proffered testimony as cumulative of Blanton's own because both testimonies involved Blanton's mental state at the time of the events surrounding his defense of self-defense.

We cannot conclude that the Michigan court's decision to affirm the exclusion of the evidence could · not be "debatable among reasonable jurists" because it is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Nevers*, 169 F.3d at 362. Under *Crane* and *Egelhoff* it is not error to limit relevant evidence for a valid state reason, including cumulativeness, and there is no clearly established Supreme Court precedent on when testimony is improperly excluded as cumulative. We therefore cannot say that the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1).

AFFIRMED.

MOORE, concurring in the result.

I concur in this court's decision to affirm the district court, but for reasons that differ from those of the majority. I disagree with the majority that the Michigan appellate court's decision to exclude Dr. DeBoer's testimony was not an unreasonable application of Supreme Court precedent; however, I concur in the result because I believe the error was harmless.

The Michigan Court of Appeals concluded that though the trial court had given an erroneous reason for excluding Dr. DeBoer's testimony, the error was harmless because the testimony would have been cumulative of Blanton's own. Dr. DeBoer's testimony, however, would have been quite different from Blanton's. Blanton could only say what he thought he saw and what he was feeling at the time of the events in question; presumably Dr. DeBoer would have identified a recognized psychological condition consistent with Blanton's claim and explained why it was possible or even reasonable for him to be seeing and feeling the things he described. Such testimony was crucial to Blanton's claim of self-defense, which, under Michigan law, requires an honest and *reasonable* belief that one is in danger of serious bodily harm or death. Blanton's position is similar to a defendant offering an alibi defense such as "I was with Mary" and then being precluded from bringing Mary to the stand on grounds of cumulativeness. Cumulative evidence is additional evidence "which goes to prove what has already been established by other evidence." BLACK's LAW DICTIONARY 380 (6th ed.1990). A defense is not established by the defendant's say-so, and expert medical testimony to support Blanton's explanation can hardly be considered cumulative in this context. The Michigan Court of Appeals's determination, made on a cold record, that the testimony of Dr. DeBoer would have been cumulative to Blanton's own is error; moreover, this error "involved an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Blanton claims that the state appeals court's decision to exclude the evidence infringed on a clearly-established constitutional right under pre-existing Supreme Court precedent. I agree. The majority in this case quotes the relevant language from *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), about a

criminal defendant's constitutional right to a meaningful opportunity to present a complete defense. In *Crane*, the trial court had excluded "competent, reliable evidence bearing on the credibility of a confession when such evidence [was] central to the defendant's claim of innocence," *id.* at 690, 106 S.Ct. 2142, but the Supreme Court held that its exclusion deprived Crane of a fair trial. In *Crane*, too, the state court had offered a reason for excluding the evidence, but the Supreme Court found the reason invalid and in the absence of a valid reason for exclusion, the defendant's constitutional right was violated.

The majority in this case goes on to say Dr. DeBoer's proffered testimony was "competent, reliable evidence ... central to the defendant's claim of innocence" but applies the AEDPA language to the decision of the state appeals court to deem it cumulative, and, finding no Supreme Court case on cumulative evidence, upholds the decision. But the relevant question for AEDPA purposes is whether the decision to exclude the evidence violated Blanton's clearly-established right to present a complete defense. Like the evidence in *Crane*, it "was all but indispensable to any chance of [Blanton's defense] succeeding." *Id.* at 691, 106 S.Ct. 2142. Without it, Blanton could not make a showing that his perceptions at the time were not only honest (entailing an evaluation of his own credibility) but reasonable (presumably entailing an evaluation from a more objective source). Because the exclusion of this evidence seriously compromised Blanton's ability to present a complete defense, the decision to exclude it involved an unreasonable application of Supreme Court precedent.

Even if Blanton had been given an opportunity to present a complete defense, however, I cannot conclude that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (*quoted in Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). This circuit recently held that the *Brecht* standard applies to harmless error review in habeas cases even in cases where the federal habeas court is the first to conduct harmless error review. *See Gilliam v. Mitchell*, 179 F.3d 990 (6th Cir.1999). Under this standard, less strict than the harmless error standard available on direct review, I conclude that the erroneous exclusion of Dr. DeBoer's testimony was harmless. Although the jury should have been allowed to hear the evidence, on the facts of this case I cannot conclude that the absence of this expert testimony substantially influenced the verdict.